## Staunton.

### M. ZADOK BRIZENDINE V. F. A. PAITSEL.

September 22, 1921.

Absent, Burks and Sims, JJ.

DEEDS—*Reservation of Way—Evidence Examined and Held Not to Show Reservation of Way Over Tract Conveyed by Deed—Case at Bar.*—The metes and bounds of a tract of land conveyed to one B. were given in the deed, and the description concluded as follows: "And containing 2.104 acres, as is shown by the map which is hereto attached, and made a part of this deed." There was nothing in the deed to indicate that the tract was sold subject to a right of way for the benefit of the balance of the grantor's lands. The map referred to showed a road eighteen feet wide, north of and entirely outside of the tract conveyed. In a later deed to another party the right of egress and ingress was given to the grantee, not over the land conveyed in the first deed, but through and over the road as shown in the map referred to in the first deed. Formerly there had been a farm road running along and within the northern boundary of the tract conveyed in the first deed. In a third deed the grantor had expressly reserved a right of way over the land granted by that deed. The calls in the first deed fitted the new location of the road as indicated in the map, but could not reasonably be applied to the old road.

*Held:* Upon the consideration of this and other evidence, that the grantor did not sell the tract to B. subject to the old road, but sold the same according to a relocation of this road, which she was fully empowered to make, and difficulties and obstructions in the new roadway furnish no ground of right, or foundation of claim, against B.

Appeal from a decree of the Circuit Court of Roanoke county. Decree for complainant. Defendant appeals.

*Reversed.*

The opinion states the case.

*Hart & Hart,* for the appellant.

*Kime & Kime,* for the appellee.

SAUNDERS, J., delivered the opinion of the court.

This is an appeal from a decree of the Circuit Court of Roanoke county, pronounced at its January term, 1921, establishing the right of the appellee (F. A. Paitsel) to the use of a roadway across the lands of the appellant, Mrs. M. Z. Brizendine, and directing the said M. Z. Brizendine to remove any and all obstructions in and across the roadway referred to in complainant's bill, and to permit said complainant to have the free and unrestrained use of said roadway, as the same appears upon a survey filed with the deposition of R. E. Magee, and made a part of this record.

This decree was entered in a suit brought by F. A. Paitsel (appellee) against the said M. Z. Brizendine (appellant) alleging that he was entitled to the roadway, *supra,* described as a "right of ingress and egress through and over the road lying between Rowan and Williamson, and also over and through the lands of C. T. Lukens, sold by Mrs. Gertrude Watts to the said Lukens."

Paitsel was the vendee of one Harriet McGeehan, who was the vendee of Mrs. Watts. Rowan is the same as Brizendine, the Brizendine tract having been bought by the former, and conveyed by Mrs. Watts to the latter. Williamson was a contiguous owner to the Watts land, his farm adjoining that portion of the said Watts land which was later conveyed to Mrs. Brizendine. After setting up in detail the grounds on which a roadway was claimed through the Brizendine tract, complainant proceeded to allege that Mrs. Brizendine, or some one acting for her, had

obstructed this road by erecting a fence across its course, thereby completely blocking same. An injunction was asked against this interference, and an order directing Mrs. Brizendine to remove the obstructions.

The defendant answered this bill, denying that she had closed, or interfered with, a public roadway, or the private right of way of the complainant, or of any other party. As affirmative matter, the answer alleged that defendant's fence, as shown by her plat, was on her line. The case was heard upon the bill, answer, exhibits and depositions, and the decree, *supra,* was awarded. From this decree an appeal was secured by Mrs. Brizendine, and the entire controversy is now before this court for review and determination.

The roadway set out in the bill of complaint lies between the curved lines on the survey referred to, *supra.* This survey will be reproduced later in the appropriate connection. The history of the roadway is as follows:

Some years ago J. Allen Watts owned a large boundary of land north of the village of Big Lick, later to become the city of Roanoke. At the beginning of the year 1906, Mrs. Gertrude Lee Watts, in her own right and as executrix of J. Allen Watts, was seized and possessed of a large part of this Watts land, and in her own right and as executrix she thereafter sold off from the inclusive boundary so held by her various small parcels to successive vendees. The first of these sales was made as of February 8, 1906. By deed of that date Mrs. Watts conveyed to Mrs. Zadok Brizendine a small parcel of land, containing two and one-tenth acres, more or less. The metes and bounds of this tract are given in the deed, and the description concludes as follows: "And containing 2.104 acres, as is shown by the map which is hereto attached, and made a part of this deed." It will be observed that this tract was not sold subject to a right of way for the benefit of the balance of Mrs. Watts' lands.

The map which was referred to and made a part of the above deed shows a road eighteen feet wide, north of and entirely outside of Mrs. Brizendine's land, and lying between her land and the Williamson land. This map which was made by McIlwaine & Smith, civil engineers, and identified by Smith in his deposition in the case, is reproduced at this point.

Scale 100' = 1"

Plat of 2,104 acre tract attached to deed from Watts to Brizendine.

In this connection the following citations are made from the testimony of the witness Smith:

### Direct Examination.

"Q. I here hand you a plat, or survey, made by McIlwaine & Smith, and ask if you are the same Smith there mentioned?

"A. I am.

"Q. Did you make that plat, and if so, did you do the surveying from which the plat was made?

"A. Yes.

"Q. Does that plat correctly show the land of Mrs. Z. Brizendine?

"A. Yes. It does according to the description in the deed."

On February 27, 1906, Mrs. Watts conveyed to Harriet McGeehan a tract of ten acres, a portion of the Watts land, *supra.* This deed contains the following grant of a right of egress and ingress over the road between Williamson and Rowan (i. e. Mrs. Brizendine).

"The said McGeehan is hereby expressly granted the right of ingress and egress through and over the road lying between said Rowan and Williamson; and also over and through the lands of C. T. Lukens, sold by the said Watts to the said Lukens."

This right of egress and ingress is not given, or undertaken to be given over the land sold to Mrs. Brizendine, but is "through and over the *road* (italics supplied) between said Rowan and Williamson"—that is to say, through and over the road lying between the lands of said Rowan (*i. e.*, Brizendine) and Williamson.

It seems to have been the practice of Mrs. Watts to make and deliver a map, or plat, of the land sold, as a part of her conveyance. The description of the land sold to Harriet McGeehan concludes with these words: "As shown by plat hereto attached and which is made a part of this deed." This map is herewith reproduced.

It will be noted that this map shows an eighteen foot road, but the northern edge, or line, of this road is apparently coincident, for a distance not indicated, with the outside boundary of the Williamson land.

The salient facts relating to the roadway across the land of Mrs. Brizendine are that at one time, when the lands afterwards sold to F. A. Paitsel, Mrs. Brizendine and C. T. Lukens were component parts of the Watts farm, there was

a farm road beginning on the said farm, and in its course running successively in the order of the above names, over the lands subsequently sold to said parties. This road was

used by Col. William Watts and his successors in title to the Watts lands as an outlet on that side of the farm to the turnpike.

In this connection the following extracts from the testimony of C. T. Lukens will be helpful:

*Examination of C. T. Lukens.*

\*    \*    \*    \*    \*    .\*    \*    \*    \*    \* '

"Q. Did the south line of the Williamson estate join the southeastern part of the Watts farm?

"A. It did, yes.

"Q. Is there an old fence along that line?

"A. Yes, there is a fence there.

"Q. About how old is that fence?

"A. I don't know; it has been there ever since I have known that farm. I think, in a more or less condition, it has been there twenty-five years or longer. It has been there ever since I have known the place.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"Q. Do I understand you to say that that right of way is right up against the Williamson line, or is it off a piece from the Williamson line, and at the bottom of that bank just to the south of the Williamson fence?

"A. Well, it is along there between the Brizendine fence and the Williamson line. I don't know how close it is to the line. There is no land between the road and the line there that is tillable, or anything like that. It is rough through there.

"Q. What I mean to get clear in the record, does the road run right up against the fence, or is there a bank between the fence and the road?

"A. I haven't been up there for some time, but I think the road was supposed to be along the line of the Williamson farm, because there is a private road through there, and people simply went through there, as I understand, by permission of the Watts family, and the roadway followed the Williamson line around, but when they sold that piece to me, they reserved the right of way through there, an eighteen-foot right of way."

The interest in the above road, the title to the fee, and the right to use the same, inhered in the owner of the Watts lands. No authority is needed to support the proposition that so long as this state of facts existed, the owners of this estate could shift the location of this road at will. There was no one to gainsay such action, for there was no one, other than the owners, with any right in this road, its use, its establishment, or its discontinuance. When Mrs. Watts, the successor in title to Col. William Watts, and his son, J. Allen Watts, sold the two-acre tract to Mrs. Brizendine, she owned the lands subsequently sold to Harriet Mc-Geehan, and by the latter in turn, and in part, sold to F. A. Paitsel. Prior to that time, to-wit, in December, 1904, Mrs. Watts had sold to C. T. Lukens a tract of land adjoining the Brizendine land on the southeast side of same. This land was sold to Lukens subject to a right of way for the benefit of the residue of the Watts farm, and of the party of the first part (*i. e.*, Mrs. Gertrude Watts), and of any person purchasing all, or any part, of said farm from her. This provision of the Lukens deed, subjecting the Lukens land to a right of way for the benefit of the residue of the Watts farm, is noteworthy, when contrasted with the entire absence of a like provision in the deed to Mrs. Brizendine. Unless Mrs. Watts had access to the Lukens land, it was futile to reserve a right of way across the same, and if it was necessary to cross the Brizendine land to reach the Lukens land, it would seem that for her own protection she would have sold the Brizendine land subject to a right of way. The absence of such a reservation supports the contention of the defendant that the approach of Paitsel to the Lukens land is by a road outside of the limits of the Brizendine tract. At the time Mrs. Watts sold the land to Lukens, the roadway in controversy undoubtedly ran in part over

the land subsequently sold to Mrs. Brizendine. But the
Brizendine land and the McGeehan land, later in part the
Paitsel land, were then parts of the Watts estate. Hence,
it was perfectly competent for Mrs. Watts, when she sold to
Mrs. Brizendine, to shift the roadway then in use from the
tract proposed to be conveyed to the latter, to some other
portion of her own, that is, Mrs. Watts' land, and to free the

Brizendine tract from this burden. As a matter of fact,
it is clear that this is precisely what she did. As noted,
*supra,* the map of the Brizendine land, accompanying the
deed to the same, indicates an eighteen foot road outside of
the tract, with the northern outside lines of said tract con-
stituting the southern limits of the road. A third survey
filed with the deposition of Robert E. Magee, and herewith
reproduced, is a map of a portion of the Brizendine land.
This map and the location of the road on same, are referred
to in the final decree of the court, and the location indicated
by the curved lines is established by said decree.

At this point the deposition of Magee is reproduced in part.

### Direct Examination.

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*

"Q. Mr. Magee, what is your residence and occupation?

"A. Salem. Occupation, farmer, county surveyor of Roanoke county, Va.

"Q. Do you know the property formerly owned by the Watts estate, and afterwards sold to Mrs. Brizendine?

"A. Yes, sir, I do.

"Q. Consisting of how many acres?

"A. 2.1 acres.

"Q. I here hand you and ask you to file as Exhibit 1, R. E. M. what purports to be a part survey of that property, and will ask you who made that survey?

"A. I made that survey.

"Q. Does that survey correctly show the present road to the north of that property?

"A. Yes, sir. To the best of· my knowledge it does. The red [curved] line on the map shows approximately the old road location, and the solid line shows the fence line where it is located now, and where the survey calls for in his deed.

"Q. Was that survey made from his deed, and are the metes and bounds along the road the same as those given in his deed?

"A. They are.

### Cross Examination.

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*

"Q. About how long ago was it that you made the first survey for Brizendine of this property?

"A. May 25, 1918. I made the first survey for Brizendine.

"Q. Did Brizendine tell you at the time why he was having this survey made?

"A. Yes, he did.  He wanted to establish his true line so as to put his fence up by it according to his deed.

"Q. Was the north line of the property that you established the same as the line you recently established?

"A. Yes, sir.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"Q. Mr. Magee, I show you a copy of a deed from Mrs. Gertrude Watts to Mrs. Brizendine, dated February 8, 1906, and acknowledged February 9, 1906, conveying the 2.1-acre tract, and ask you if, in the description conveying said tract of land, the south side of an eighteen-foot road is not called for?

"A. Yes, sir.

"Q. Is this eighteen-foot road mentioned in said deed the same as the old road in question?

"A. I suppose it is.  I wish to make this explanation here.  In making this survey of mine, there is no known corner on the place to be found, except an iron pin at the corner of the McGeehan lot, and taking the iron pin at the corner of said lot, as the north side of the eighteen-foot road, I measured off eighteen feet for the road, for the south side of the road, and thence ran for the south side of the road according to the Brizendine deed.

"Q. Is this McGeehan, Harriet McGeehan?

"A. I think so.  The old pin in the ground that I mentioned is a recognized corner, the said iron pin as shown on the road plat is admitted to be the original corner."

From the third map it appears that the farm road, as it was in use at the time of the sale to Mrs. Brizendine, ran along and within the northern boundary of her tract.  Further, if the indicated location is established by a decree of this court, confirming the decree of the trial court, it will be noted that a small strip of land of varying width is left between the northern limit, or boundary, of the road and the Williamson land.  The line marked "old fence" is the southern boundary line of the latter tract.

If Mrs. Watts intended to convey to Mrs. Brizendine, and did convey to her, the two-acre tract, subject to the roadway, as indicated above, then certainly the map accompanying the deed to Mrs. Brizendine was in the highest degree misleading, since it indicates a road entirely outside the Brizendine tract, with its northern boundary coincident with the Williamson land. Further, if Mrs. Watts intended to grant the Brizendine land subject to a roadway across same, and Mrs. Brizendine was willing to take this land subject to this burden, it is altogether likely that the deed to Mrs. Brizendine would have contained a specific reservation of a right of way for the benefit of the residue of Mrs. Watts' lands, like the one noted, *supra,* in her deed to C. T. Lukens, of date December, 1904.

Having in mind that at the date of the deed to Mrs. Brizendine, Mrs. Watts enjoyed the unquestionable right to shift the location of this roadway without liability to any one, it is not likely that when she disposed of this Brizendine land, she would have left as a part of her estate a strip of unsold, and with reference to future use, worthless land, between the roadway and the Williamson land. Nor is it likely that Mrs. Brizendine, buying so small an area as she did, would have been willing to take it subject to a roadway which, with reference to the size of the lot, appreciably reduced its available use and value. The deed made by Mrs. Watts with the accompanying map is a clear indication in itself that Mrs. Watts was not selling, and Mrs. Brizendine was not buying, the two-acre lot subject to a right of way. Mrs. Brizendine did not need this right of way as an outlet. The turnpike was to the east of her land, and she was entitled, for the purposes of ingress and egress in that direction, to use the roadway across the Lukens land, by virtue of the reservation in Mrs. Watts' deed to Lukens. Mrs. Watts, however, did need an outlet, for unless she could reach the Lukens tract from the balance of

her lands, her reservation of a right of way across that
tract was valueless. She could reach the Lukens land either
by crossing the Brizendine land, or by utilizing as a road
the strip between the Brizendine land and the Williamson
land, noted on the Brizendine map. With this choice be-
fore her, if she had contemplated the use of the right of
way across the Brizendine land, she would doubtless have
provided for that right by appropriate reservation in the
Brizendine deed, and not indicated a contrary purpose by
a misleading map "attached to and made a part of" that
deed.

Another indication that Mrs. Watts intended to shift this
old road to another location is found in the calls of the
deed to Mrs. Brizendine. These calls are made in part
with reference to a road, either the road on its old location
indicated by the red lines, or a road on the new location
indicated by the Brizendine plat. The calls fit the new lo-
cation, but cannot reasonably be applied to the old. In this
connection it will be noted that the old roadway is not re-
ferred to in the Watts deeds as a road of definite width.
The reservation in the Lukens deed is of "a right of way"
not of a road eighteen feet wide. Mr. Lukens speaks of this
right of way as "an eighteen-foot right of way reserved," but
his deed does not so provide. The first reference in the pa-
pers to a road eighteen feet wide is in the map accompany-
ing Mrs. Brizendine's deed, referred to *supra.* The plat ac-
companying the deed to Harriet McGeehan also indicates
an eighteen foot road, running between straight lines, not
a curved and irregular road as indicated by the curved
lines on the Magee exhibit. But the McGeehan deed fol-
lowed the Brizendine deed, and if Mrs. Watts had shifted
the road prior to the conveyance of the Brizendine land,
and sold that land free of the burden of a right of way,
then she was powerless to impose that burden upon said
land in her subsequent conveyance to Mrs. McGeehan,

whatever might have been her purpose and intent in that respect.

As a matter of fact, the deed to Harriet McGeehan is in harmony with the indications of the deed to Mrs. Brizendine. Mrs. McGeehan is given a right of egress and ingress merely, "through and over," not the land of Mrs. Brizendine, but the "road lying between said Brizendine and Williamson." The implication of this language is that there was at the time of this deed a road *between* these two tracts, not a road *in large part on* the Brizendine tract. The prior map to Mrs. Brizendine indicated such a road, and the map accompanying the deed to Mrs. McGeehan affords a like indication. The deed from H. M. McGeehan to F. A. Paitsel, conveying a portion of her ten-acre purchase, contains the following provision:

"A wagon road is hereby given and granted egress along the said old road above referred to, eighteen feet in width, unto the party of the second part."

But Mrs. McGeehan obviously could pass to Paitsel only what she had received from Mrs. Watts. The land sold to said McGeehan is subject to a right of way "for any person owning adjacent lands." Indeed it will be noted that the only deed made by Mrs. Watts that does not subject the land conveyed to a right of way, is the deed to Mrs. Brizendine. Recurring now to the calls in the Brizendine deed, as applied to the road therein referred to, we find that the first call is from the corner of the Watts and Lukens land N. 52 deg. 42' E. 144.2 feet to the south side of an eighteen foot road (not an old road it will be noted). This call indicates that the line stops at the margin of the road. The next call is "thence N. 4 deg. 15' E. along the road to an angle in the road." As the first call stopped at the southern edge of the road, the second call indicates a straight line coincident with the southern margin of that road to the corner, *i. e.*, the angle in the road. The third call is "thence still along

the road N. 46 deg. W. 405.6 feet to a point." The next call leaves the road. These calls fit perfectly with the map filed with the Brizendine deed, indicating an eighteen foot road outside and north of the Brizendine land. On the other hand, they cannot be made to fit the road indicated by the curved lines. The eighteen foot road is indicated in straight, not curving lines, and if, beginning at the termination of the first call of the deed on the southern margin of a road, it had been intended thereafter to follow the course of a curving road, such intent would have been indicated in the usual language of surveyors, by the words, "thence with the meanders of the road." Moreover, according to the calls of the original map, the terminus of the 405.5 foot line, that is, the corner of the Brizendine line at that point, is on the southern margin of a road. The road indicated by the curved lines is slightly above the Brizendine line at its western extremity, and below it towards the middle of the same. This curved line road, as heretofore noted, is at no portion of its northern edge, or limit, coincident with the Williamson line, which is the same as the old fence on the Magee map. The evidence is conclusive that Mrs. Watts did not sell the Brizendine land subject to a road, but sold same according to a relocation of this road, which she was fully empowered to make. It appears from the evidence that Mrs. Brizendine allowed the use of the roadway, according to its old location, for some years after her purchase, that is, from February 8, 1906, to some time in the year 1920. But this use was subject to discontinuance at the will and pleasure of the owner of the tract, and no rights superior to the owner's rights were secured by such use. As owner, she had the right to erect a fence along the northern boundary of her land, and to exclude the complainant, Paitsel, and all others from the use of the same.

It is objected that the presence of trees and banks along the Williamson fence, or line, shows that the Watts farm road did not run along there, but did run on the location indicated by the curved lines. This is doubtless true, but it is not material.

Paitsel claims through Mrs. McGeehan, and is successor to the right which she derived from Mrs. Watts. This right, as we have noted upon inspection of the McGeehan deed, is the right of "ingress and egress through and over the road lying between Brizendine and Williamson." If this roadway needs to be put in order for travel, that is the concern of Paitsel and others entitled to its use. Difficulties and obstructions in that roadway furnish no ground of right, or foundation of claim, against Mrs. Brizendine. Having forbidden the use of her land for the purposes of egress and ingress by others, the parties affected by that action, but who are entitled to a right of way to the Lukens land, are remitted to the roadway established for their benefit by their grantor.

For the reasons given, the decree of the trial court establishing the roadway set up in complainant's bill, and directing the defendant, Mrs. M. Z. Brizendine, to remove the obstructions in same, and allow its free use to complainant, must be reversed, and an order dismissing complainant's bill will be entered by this court.

*Reversed.*